2022 IL 126120

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 126120)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RYAN JAMES DEROO, Appellant.

*Opinion filed March 24, 2022.*


CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Garman, Theis, Neville, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

Justice Carter took no part in the decision.


## OPINION

¶ 1    Following a jury trial in the circuit court of Rock Island County, defendant Ryan James Deroo was convicted of aggravated driving under the influence (DUI) and aggravated driving while his license was revoked and sentenced to concurrent terms of imprisonment of nine and three years, respectively. During his trial, the results

of a chemical blood test establishing defendant's blood alcohol content were admitted into evidence pursuant to section 11-501.4(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.4(a) (West 2016)). This provision allows the admission of chemical tests of blood conducted in the course of emergency medical treatment "as a business record exception to the hearsay rule." *Id.*

¶ 2        On appeal, defendant maintained that section 11-501.4(a) conflicts with Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012), which expressly excludes "medical records in criminal cases" from the business records exception to the hearsay rule. Defendant further contended that Illinois Rule of Evidence 803(6) should control over section 11-501.4(a) and, therefore, that the results of the chemical blood test should have been deemed inadmissible hearsay. The appellate court found no conflict between the statute and the rule of evidence and affirmed. 2020 IL App (3d) 170163. We now affirm the judgment of the appellate court, although we do so on different grounds.

¶ 3                              BACKGROUND

¶ 4        Defendant was charged in the circuit court of Rock Island County with aggravated driving under the influence of alcohol following four prior DUI convictions (625 ILCS 5/11-501(a)(2), (d)(2)(D) (West 2016)), aggravated DUI with a blood alcohol concentration of 0.08 or greater following four prior DUI convictions (*id.* § 11-501(a)(1), (d)(2)(D)), and aggravated driving while his license was revoked (*id.* § 6-303(d)). At trial, evidence introduced by the State showed that on the evening of March 13, 2016, defendant was drinking with some of his friends in his grandmother's garage at her home in Aledo, Illinois. After the friends left, defendant got into his grandmother's car, alone, and drove away. Defendant headed north on Turkey Hollow Road, a two-lane, rural road in Rock Island County. Defendant was speeding, and as he approached a curve, he lost control of his grandmother's car. The car went off the road, flipped several times, and crashed into a ditch along the east side of the road. Carrie Olsen, a witness to the accident, testified that she stayed near the crash site until emergency personnel arrived. Olsen saw only one person in the car.

¶ 5        Bruce Retherford, a paramedic, testified that he was called to the scene of defendant's accident. When he arrived, he saw a car in the ditch on the side of the

road and defendant hanging from the waist up out of the driver's side window. No one else was in the car. Retherford helped remove defendant and get him into an ambulance. While examining defendant, Retherford noticed that he had a "very strong odor of beer" on his breath and that his pupils' reaction to light was consistent with intoxication. Further, defendant's mood was unstable, alternating between hostility and friendship toward Retherford. In Retherford's opinion, defendant was intoxicated. Retherford stated that defendant suffered several lacerations, including a severe laceration to his face, and was transported to the emergency room at Trinity Hospital in Rock Island.

¶ 6        Jennifer Wilkinson was the emergency room nurse on duty when defendant arrived at the hospital. She testified that defendant was uncooperative, "kept trying to leave," and was "very rude [and] disrespectful" to the hospital staff. Defendant admitted to Wilkinson that he had been drinking, and Wilkinson believed that he was intoxicated.

¶ 7        Dr. Douglas Gaither treated defendant at the hospital and testified that he ordered defendant's blood drawn as a regular part of his emergency room treatment. Gaither stated that defendant's blood was analyzed at the laboratory in the hospital, which was the laboratory routinely used by the emergency room for blood testing. According to Gaither, defendant's blood alcohol test showed a serum concentration of 247 milligrams of alcohol per deciliter. Gaither further stated that defendant's speech was slurred and that he asked defendant if he had been drinking. Defendant admitted that he had. Based on this response, as well as defendant's slurred speech, his slow reaction time when he was asked questions, and the results of the blood alcohol test, Gaither believed that defendant was intoxicated.

¶ 8        Rock Island County sheriff's deputy Claire Woodthorp testified that she spoke with defendant in the emergency room. According to Woodthorp, defendant's speech was very slow and slurred, and he smelled strongly of alcohol. Defendant admitted to Woodthorp that he had "totaled the car" but was unwilling to answer any other questions or make any eye contact. Woodthorp asked defendant to consent to a blood draw, but he refused. Woodthorp stated that she did not direct any of the hospital staff to conduct a blood draw. Given the circumstances of defendant's accident and his condition in the emergency room, Woodthorp believed

defendant was intoxicated. She therefore issued him a citation for driving under the influence of alcohol.

¶ 9        John Wetstein, toxicology training coordinator for the Illinois State Police forensic science service, testified regarding the conversion of serum blood alcohol concentration results to whole blood alcohol concentration results. Wetstein explained that the term "blood serum" refers to only that portion of blood that is left when all clotting factors, proteins, and fats are removed. The statutory standard for the offense of driving under the influence, which is set at 0.08 grams of alcohol or greater per deciliter, is expressed in terms of whole blood, not serum blood. Wetstein stated that serum blood alcohol results can be converted to whole blood results by dividing by 1.18. Applying this formula, Wetstein concluded that defendant's serum blood alcohol concentration of 247 milligrams of alcohol per deciliter converted to 0.209 grams of alcohol per deciliter of whole blood, or more than twice the legal limit.

¶ 10       The State sought admission of the results of defendant's blood alcohol test pursuant to section 11-501.4(a) of the Vehicle Code (*id.* § 11-501.4(a)). Under section 11-501.4(a), the results of chemical tests of blood conducted in the course of emergency medical treatment may be admitted into evidence in prosecutions for DUI "as a business record exception to the hearsay rule" so long as certain foundational requirements are met. *Id.* Specifically, it must be shown that the blood test was ordered in the regular course of providing emergency medical treatment and not at the request of law enforcement authorities and that the test was performed by the laboratory routinely used by the hospital. The trial court concluded these requirements had been met and admitted the results of defendant's blood alcohol test as a business record exception to the hearsay rule. The results were published to the jury.

¶ 11       Defendant testified in his own defense. Defendant admitted that he had been drinking on the night of March 13, 2016, but maintained that he had not been driving his grandmother's car when it crashed. According to defendant, another individual who he knew only as "T" had been driving. Defendant was unable to provide any further information about this person, other than that he was a "short guy" with dark hair and a beard who had shown up at his grandmother's garage earlier in the day with defendant's friends. Defendant stated that his friends knew

nothing about "T" either as they had simply encountered him when walking around town and had brought him to the garage. Defendant also could not remember what had happened to "T" after the crash.

¶ 12 The jury found defendant guilty on all three charged counts. The trial court merged defendant's conviction for aggravated DUI with a blood alcohol concentration of 0.08 or greater into his conviction for aggravated driving under the influence of alcohol. The court then entered judgments of conviction for aggravated driving under the influence of alcohol and aggravated driving with a revoked license and sentenced defendant to concurrent prison terms of nine and three years. Defendant appealed.

¶ 13 On appeal, defendant argued, in part, that his aggravated DUI conviction should be reversed because the results of the hospital blood test were improperly admitted into evidence under section 11-501.4(a) of the Vehicle Code. In support, defendant pointed to Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012). This rule sets forth a hearsay exception for records of "regularly conducted business activity" (commonly referred to as the business records exception to hearsay) but expressly excludes "in criminal cases medical records." *Id.* According to defendant, the plain language of Illinois Rule of Evidence 803(6) conflicts with section 11-501.4(a). Further, defendant noted that, when a statute conflicts with a rule of evidence promulgated by this court, the supreme court rule prevails. Ill. R. Evid. 101 (eff. Jan. 1, 2011) ("A statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court."); *People v. Walker*, 119 Ill. 2d 465, 475 (1988) ("where *** a legislative enactment directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority, the rule will prevail"). Accordingly, defendant maintained that the results of his chemical blood test were erroneously admitted and his aggravated DUI conviction should be reversed.

¶ 14 Over a dissent, a majority of the appellate court affirmed. 2020 IL App (3d) 170163. In so ruling, the appellate court rejected defendant's contention that section 11-501.4(a) conflicts with Illinois Rule of Evidence 803(6). *Id.* ¶ 44. The appellate court, citing *People v. Hutchison*, 2013 IL App (1st) 102332, ¶¶ 18, 24, noted that, according to the committee comments that accompany the Illinois Rules of Evidence, the rules were not intended to abrogate or supersede any statutory rule of

evidence that existed at the time the rules were adopted. 2020 IL App (3d) 170163, ¶ 40. Further, there was no question that, when the rules were adopted, section 11-501.4(a) was in effect. On this basis, the appellate court concluded that the rule and the statute are not in conflict. *Id.* ¶ 44.

¶ 15     This appeal followed. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 16                                  ANALYSIS

¶ 17            *Illinois Rule of Evidence 803(6) and Section 11-501.4(a)*

¶ 18     Defendant's sole contention on appeal is that there is a conflict between Illinois Rule of Evidence 803(6) and section 11-501.4(a) of the Vehicle Code. To address this contention, we must examine the language of both provisions.

¶ 19     The same principles of interpretation govern both statutes and the rules of this court. *People v. Gorss*, 2022 IL 126464, ¶ 10. Our goal is to ascertain and give effect to the intention of the drafters. *Id.* The most reliable indicator of that intent is the language used, which should be given its plain and ordinary meaning. *Id.* Where the language is clear and unambiguous, we must apply the language used without further aids of construction. *Id.* The interpretation of both a statute and a supreme court rule are questions of law that we review *de novo*. *Id.*

¶ 20     Section 11-501.4(a) of the Vehicle Code provides:

> "§ 11-501.4. Admissibility of chemical tests of blood, other bodily substance, or urine conducted in the regular course of providing emergency medical treatment.
>
> (a) Notwithstanding any other provision of law, the results of blood, other bodily substance, or urine tests performed for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, of an individual's blood, other bodily substance, or urine conducted upon persons receiving medical treatment in a hospital emergency room *are admissible in evidence as a business record exception to the hearsay rule* only in prosecutions for any violation of Section 11-501 of this Code or a similar provision of a local

ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961 or the Criminal Code of 2012, when each of the following criteria are met:

(1) the chemical tests performed upon an individual's blood, other bodily substance, or urine were ordered in the regular course of providing emergency medical treatment and not at the request of law enforcement authorities;

(2) the chemical tests performed upon an individual's blood, other bodily substance, or urine were performed by the laboratory routinely used by the hospital; and

(3) results of chemical tests performed upon an individual's blood, other bodily substance, or urine are admissible into evidence regardless of the time that the records were prepared." (Emphasis added.) 625 ILCS 5/11-501.4(a) (West 2016).

¶ 21        Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012) provides:

"RULE 803.

HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11),

unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, *but not including in criminal cases medical records*. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." (Emphasis added.)

¶ 22 The language of both section 11-501.4(a) and Illinois Rule of Evidence 803(6) is clear and unambiguous. Section 11-501.4(a) of the Vehicle Code authorizes the admission of the results of chemical tests of blood—a type of medical record—as a "business record exception to the hearsay rule" in DUI cases. Illinois Rule of Evidence 803(6), on the other hand, expressly excludes medical records from the business records hearsay exception in criminal cases. Each provision, by its plain language, directs different action; Illinois Rule of Evidence 803(6) prohibits what section 11-501.4(a) allows. The statute and the rule are thus in direct conflict.

¶ 23 The State, however, contends there is no conflict between the two provisions and, in support, points to the committee comments to the Illinois Rules of Evidence. The State notes that these comments, which were accepted by this court (Ill. S. Ct., M.R. 24138 (adopted Sept. 27, 2010)), concluded "[t]here [wa]s no current statutory rule of evidence that [wa]s in conflict with a rule contained in the Illinois Rules of Evidence," with a possible exception not at issue here. Ill. R. Evid. 101, Committee Comments (adopted Sept. 27, 2010). Further, the comments noted that, although the Illinois Rules of Evidence did not codify every statutory rule of evidence, they "[we]re not intended to abrogate or supersede any current statutory rules of evidence" and were intentionally drafted "to avoid in all instances affecting the validity of any existing statutes promulgated by the Illinois legislature." Ill. Rs. Evid. Committee Commentary (adopted Sept. 27, 2010). From this, the State contends that "[b]ecause the Court intended that the Illinois Rules of Evidence ('Rules') not invalidate any existing and otherwise valid statutory rules of evidence, Rule 803(6) therefore did not invalidate section 11-501.4" when it codified the business record hearsay exception. We disagree.

¶ 24 The State's reasoning is backwards. The meaning of a rule or statute is determined first by examining the language of the provision itself, not extratextual sources. See, *e.g.*, *Gorss*, 2022 IL 126464, ¶ 10. If, as is the case here, the language

of the provision is clear and unambiguous, it must be given effect as written, without resorting to further aids of construction or reference to materials outside the text. *Id.* Accepting the State's position would require us to reject this fundamental proposition and instead hold that a statement of intent that exists outside the text of a rule takes precedence over the plain language of the rule itself. We cannot do this. In this case, the committee comments to the Illinois Rules of Evidence do not eliminate the conflict between the plain language of section 11-501.4(a) and Illinois Rule of Evidence 803(6).

¶ 25        The State argues, in the alternative, that even if the plain terms of Illinois Rule of Evidence 803(6) and section 11-501.4(a) require different outcomes in the admission of blood tests, there is nevertheless no conflict between the two provisions because they govern the admission of evidence on fundamentally different bases. The State explains that "the fact that evidence is admissible under one exception and not another simply proves that the exceptions are different, not that they conflict." According to the State, that is the situation presented here, with Illinois Rule of Evidence 803(6) embodying the business records exception to the hearsay rule and section 11-501.4(a) embodying a distinct "emergency room" exception. We reject this contention.

¶ 26        The business records hearsay exception codified in Illinois Rule of Evidence 803(6) is premised on the notion that records, made in the regular course of an organization's activities and relied upon by the organization itself in its own affairs, are likely to be accurate and, therefore, sufficiently trustworthy for use in court. Simply stated, "businesses are motivated to keep records accurately and are unlikely to falsify records upon which they depend." *City of Chicago v. Old Colony Partners*, 364 Ill. App. 3d 806, 819 (2006); see also, *e.g.*, *People v. Peterson*, 150 Ill. App. 3d 782, 786 (1986) ("The rationale for the business-records exception is that in carrying on the proper transactions of business, business records are useless unless accurate, making the motive to follow a routine of accuracy great while making the motive to falsify nonexistent."); *Birch v. Township of Drummer*, 139 Ill. App. 3d 397, 406 (1985) ("The rationale for the rule rests on the notion that in carrying on the proper transaction of business, such records are useless unless accurate."); *People v. Wells*, 80 Ill. App. 2d 187, 193 (1967).

¶ 27     This same rationale underlies section 11-501.4(a). Doctors, nurses, and other medical personnel routinely rely on the results of chemical blood tests generated in the emergency room in making life and death decisions. The results of these tests are useless unless accurate, are unlikely to be falsified and, therefore, are deemed sufficiently trustworthy for use in courts. Both section 11-501.4(a) and Illinois Rule of Evidence 803(6) codify a form of the business records hearsay exception. Indeed, the legislature itself has recognized this fact, stating in section 11-501.4(a) that the blood test results are admissible "as a business record exception to the hearsay rule." 615 ILCS 5/11-501.4(a) (West 2016). We find no basis for rejecting the legislature's own characterization of the statute.

¶ 28     Section 11-501.4(a) includes chemical blood tests, a type of medical record, within the business records hearsay exception, while Illinois Rule of Evidence 803(6) excludes medical records from the exception. It is not possible to give effect to both provisions at the same time. The statute and the rule are, therefore, in conflict.

¶ 29                 *Amendment of Illinois Rule of Evidence 803(6)*

¶ 30     The interests of maintaining a sound and uniform body of law compel us to resolve the conflict between Illinois Rule of Evidence 803(6) and section 11-501.4(a) by amending the rule. Some background information will help explain the basis for this conclusion.

¶ 31     Historically, both federal and state courts were divided as to whether medical records fell within the business records exception to the hearsay rule, with the disagreement centered specifically on the admission of medical opinions and diagnoses. See generally *Thomas v. Hogan*, 308 F.2d 355, 358 (4th Cir. 1962); Fed. R. Evid. 803(6), Advisory Committee Notes; Irene M. Sheridan, *Wilson v. Clark: The Need to Include Medical Records in the Business Records Exception to the Hearsay Rule*, 13 Loy. U. Chi. L.J. 587, 592-93 (1982). One line of authority held that medical diagnoses and opinions require expert interpretation and, therefore, it would be inappropriate to admit such records into evidence without first requiring expert witness testimony and providing an opportunity for cross examination. *Thomas*, 308 F.2d at 360. A second line of authority, however, held that medical opinions and diagnoses are analytically indistinguishable from other recorded facts

and, therefore, the presence of a diagnosis or opinion within a medical report should not be a reason to exclude the report as hearsay. See, *e.g.*, *Long v. United States*, 59 F.2d 602, 603 (4th Cir. 1932) ("The diagnosis is the opinion of a scientific expert who has examined the insured, heard his statements, and observed his symptoms. It approximates a statement of fact, being in reality what the physician observes when he views the insured with the trained eye of an expert."); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988) (noting the difficulty of drawing a line between "fact" and "opinion").

¶ 32        This court adopted the first line of reasoning in 1922 in *Wright v. Upson*, 303 Ill. 120, 144 (1922). In *Wright*, this court held that, for a hospital record containing opinions or diagnoses of a patient's condition to be admissible, the persons who entered those opinions or diagnoses in the record would have to testify that the entries were correct. *Id.* Following *Wright*, Illinois courts continued to hold that medical records were generally excluded from the business records hearsay exception, and this was the common-law rule in Illinois for many years. See, *e.g.*, *Flynn v. Troesch*, 373 Ill. 275, 282-83 (1940); *People v. Giovanetti*, 70 Ill. App. 3d 275, 288 (1979); Edward J. Kionka & James R. Williams, *Survey of Illinois Law: Evidence*, 17 S. Ill. U. L.J. 873, 900 (1993).

¶ 33        In the 1960s, the Illinois common-law rule regarding medical records was codified in two places. First, for criminal cases, the rule was codified in section 115-5 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (Ill. Rev. Stat. 1967, ch. 38, ¶ 115-5). Section 115-5 set forth the general business records exception to the hearsay rule for criminal cases but also stated that no writing or record shall become admissible as evidence if "[s]uch writing or record has been made by anyone in the regular course of any form of hospital or medical business." *Id.* ¶ 115-5(c)(1). Medical opinions and diagnoses were not included among the possible contents of records listed in the statute that could fall under the hearsay exception. *Id.* ¶ 115-5(a). This statutory exclusion of medical records from the business records exception to the hearsay rule remains the same today. See 725 ILCS 5/115-5(a), (c)(1) (West 2016).

¶ 34        Second, the business record hearsay exception was codified for civil cases in 1967 in Illinois Supreme Court Rule 236 (eff. Jan. 1, 1967) (see Ill. Rev. Stat. 1967, ch. 110A, ¶ 236). As with section 115-5 of the Code of Criminal Procedure, Rule

- 11 -

236 expressly stated that it did "not apply to the introduction into evidence of medical records." Ill. S. Ct. R. 236(b) (eff. Jan. 1, 1967). The committee comments to the rule explained this proviso by noting that, at the time, federal cases had "not been in agreement" on the admissibility of medical records under the business records exception and, therefore, the "Committee concluded that it was wise to exclude such records from the coverage of the rule." Ill. S. Ct. R. 236(b), Committee Comments (adopted Jan. 1, 1967); see also Philip W. Tone, *Comments on the New Illinois Supreme Court Rules*, 48 Chi. B. Rec. 46, 51 (1967); Kionka & Willams, *supra*, at 900-01.

¶ 35    Thus, by the end of the 1960s, Illinois law recognized the business records exception to hearsay for criminal cases under section 115-5 of the Code of Criminal Procedure and for civil cases under Rule 236. Medical records were excluded from the business records exception under both provisions.

¶ 36    This situation began to change, however, with the enactment of the Federal Rules of Evidence in 1975. Federal Rule of Evidence 803(6) resolved the question of whether medical records fall within the business records exception as a matter of federal law by including them in the rule and expressly using the terms "opinions" and "diagnoses" in describing the contents of records that may fall under the hearsay exception. See Fed. R. Evid. 803(6), Advisory Committee Notes (in order to make clear that medical records fall under the business records exception, "the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries"). Thus, following the adoption of the Federal Rules of Evidence, there was no longer any dispute that, as a matter of federal law, medical records were included within the business records hearsay exception to the hearsay rule, both for criminal and civil cases. See generally 2 Kenneth S. Broun *et al*., McCormick on Evidence § 293 (8th ed. Jan. 2020 Update) ("Given that Federal Rule 803(6) specifically includes opinions or diagnoses, this historical distinction based on whether the opinion is objective or conjectural does not appear to survive.").

¶ 37    Following the adoption of Federal Rule of Evidence 803(6), the law in Illinois began to evolve. In 1988, the legislature enacted section 11-501.4 of the Vehicle Code (see Pub. Act 85-992, § 1 (eff. Jan. 5, 1988)), the provision at issue in this case, thereby allowing the admission of chemical blood tests under the business

records exception. This action was consistent with the proposition that medical records fall within the business records exception.

¶ 38        Thereafter, in 1991, this court amended Rule 236 to include medical records within the business records exception in civil matters. *Troyan v. Reyes*, 367 Ill. App. 3d 729, 733 (2006); Kionka & Willams, *supra*, at 902 (noting that, by amending the "antiquated rule," Illinois had "joined the other states that consider medical records an exception to the hearsay rule under the business records exception" and had "finally come in step with the modern view"). This amendment to Rule 236 was not surprising. As one author has explained:

> "The rationale for excluding medical records from the business record exception [under Rule 236] was based on the federal courts' previous disagreement over their treatment. [Federal] Rule [of Evidence] 803(6), however, settled that disagreement and specifically included medical records in the business records exception. The drafters of federal rule 803(6) recognized that medical records were particularly trustworthy, and included the words 'diagnoses' and 'opinions' within the rule to clarify the intent to include medical records. Because the federal rules are no longer unsettled, the original reason for excluding medical records from the Illinois business records exception to the hearsay rules is no longer valid." Sheridan, *supra*, at 603.

See also Kionka & Willams, *supra*, at 901-02; *Troyan*, 367 Ill. App. 3d at 734 (holding that Rule 236 permitted the admission of diagnoses and opinions contained in medical records). Thus, by the end of the 1990s and into the early 2000s, the following rules were in place in Illinois: (1) in section 115-5 of the Code of Criminal Procedure a general statutory provision establishing the business records exception to the hearsay rule for criminal cases that excluded medical records, (2) in section 11-501.4(a) of the Vehicle Code an exception to section 115-5 allowing for the admission of chemical blood tests under the business records exception, and (3) under Rule 236 a different rule for civil cases that included medical records within the business records exception.

¶ 39        In 2010, this court adopted the Illinois Rules of Evidence, including Rule 803(6). Like the parallel federal rule, our Rule 803(6) applies to both criminal and civil matters. Moreover, like Federal Rule of Evidence 803(6), Illinois Rule of Evidence 803(6) expressly states that the records that fall under this exception

include "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, *opinions, or diagnoses*." (Emphasis added.) Ill. R. Evid. 803(6) (eff. Apr. 26, 2012). Yet, unlike the federal rule, our Rule 803(6) also excludes medical records from the business records exception in criminal cases. Thus, as of today in Illinois, civil cases continue to be governed under Illinois Rule of Evidence 803(6) by the principle that medical records fall within the business records exception to the hearsay rule. In criminal matters, however, medical records do not fall within the exception, even though Illinois Rule of Evidence 803(6) expressly recognizes that opinions and diagnoses do fall within the exception. Further, section 11-501.4(a) of the Vehicle Code allows for the admission of chemical blood tests under the business records exception, but this provision conflicts with the blanket exclusion of medical records from the exception under Illinois Rule of Evidence 803(6).

¶ 40      The current state of Illinois Rule of Evidence 803(6) calls for amendment. Though used sparingly, this court has expressly reserved the prerogative to depart from the rulemaking procedures set forth in Illinois Supreme Court Rule 3 (eff. July 1, 2017) and may utilize a case before us as a vehicle to adopt a rule change. *In re B.C.P.*, 2013 IL 113908, ¶ 17. This is such a case. As the foregoing discussion makes clear, Illinois Rule of Evidence 803(6) contains serious inconsistencies and contradictions. These inconsistencies, as well as the conflict between the rule and section 11-501.4(a) of the Vehicle Code, can be resolved by amending Illinois Rule of Evidence 803(6) and eliminating the medical records exclusion contained within the rule.

¶ 41      The need for this amendment is apparent. When this court adopted Illinois Rule of Evidence 803(6), the only reason medical records were excluded from the business records exception in criminal cases was the existence of section 115-5(c)(1) of the Code of Criminal Procedure and the desire to not supersede or invalidate any existing statutory rules of evidence. However, section 115-5(c)(1) was itself a codification of a common-law rule—the exclusion of medical opinions and diagnoses from the business records exception—that this court expressly rejected in the new Illinois Rule of Evidence 803(6). When this court adopted the new rule and determined that opinions and diagnoses were properly within the business records exception, the rationale for excluding medical records from the hearsay exception was eliminated. Thus, in its current form Illinois Rule of

Evidence 803(6) is internally contradictory. On the one hand, the rule excludes medical records from the hearsay exception in criminal cases because of a concern regarding the admissibility of medical opinions and diagnoses. On the other hand, the rule expressly recognizes that diagnoses and opinions are admissible under the rule.

¶ 42    Further, we can discern no basis for excluding medical records from the business records exception in criminal cases but not in civil ones, as Illinois Rule of Evidence 803(6) currently requires. Different burdens of proof may apply in criminal and civil cases, and there may be constitutional limits to the admission of evidence in criminal cases that are not present in civil matters. However, the trustworthiness of a recorded document does not change depending on whether the document is used in a civil matter or a criminal one. It therefore makes little sense to retain the distinction found in Illinois Rule of Evidence 803(6) wherein medical records come within the business records exception in civil cases but not in criminal.

¶ 43    We conclude that the medical records exclusion for criminal cases found in Illinois Rule of Evidence 803(6) is not logically defensible. As Professor Michael Graham has observed:

> "It is difficult to acknowledge that [the rule set forth in *Wright* requiring the exclusion of medical records from the business records exception] continued to represent the state of the law of admissibility of hospital records in Illinois for nearly 70 years. The requirement of calling or accounting for all persons making entries has virtually disappeared from the law of evidence everywhere as applied to business records generally. *** No reason for continuing it with respect to hospital records was advanced, and none is apparent.

> *** The objection to opinions in the form of diagnoses or recitals of the patient's condition is equally outmoded. The rule against opinions as it once was conceived has been revised so as to admit opinions that may be helpful to the trier of fact, and this attitude needed to be extended to hospital records." Michael H. Graham, Graham's Handbook of Illinois Evidence § 803.6, Commentary, at 1069-70 (2019 ed.).

Illinois Rule of Evidence 803(6) should therefore be amended by striking the medical records exclusion for criminal cases from the rule.

¶ 44 We recognize that striking this exclusion from Illinois Rule of Evidence 803(6) creates a conflict with section 115-5(c)(1) of the Code of Criminal Procedure. Nevertheless, the amendment is appropriate. Section 115-5(c)(1) was a codification of a common-law rule first adopted by this court, but the rationale behind that rule no longer exists, having been abandoned by this court with the adoption of Illinois Rule of Evidence 803(6) and the recognition that medical opinions and diagnoses fall within the business records exception. Moreover, the legislature itself has retreated from the medical records exclusion for criminal cases in section 115-5(c)(1) by adopting the chemical blood test exception in section 11-501.4(a) of the Vehicle Code. Most importantly, we have an obligation to maintain the Illinois Rules of Evidence in a coherent way, regardless of the actions of the legislature (see Ill. R. Evid. 101 (eff. Jan. 1, 2011)), and Illinois Rule of Evidence 803(6) cannot be left in its present form.

¶ 45 For the foregoing reasons, Illinois Rule of Evidence 803(6) is amended effective immediately by removing the medical records exclusion for criminal cases. In the current version of Illinois Rule of Evidence 803(6), this is the first clause of the rule, which reads, "Except for medical records in criminal cases." See Ill. R. Evid. 803(6) (eff. Sept. 28, 2018). This amendment is applicable to all pending cases, including the case at bar. To the extent that amended Illinois Rule of Evidence 803(6) conflicts with section 155-5(c)(1) of the Code of Criminal Procedure, the rule takes precedence. Ill. R. Evid. 101 (eff. Jan. 1, 2011).

¶ 46 Applying amended Illinois Rule of Evidence 803(6) to this appeal answers in the negative defendant's contention that his chemical blood tests were erroneously admitted. We note that applying the amended rule to conduct in this case that occurred before the amendment took effect does not raise any *ex post facto* concerns. As the United States Supreme Court has explained, "[o]rdinary rules of evidence *** do not violate the [*Ex Post Facto*] Clause" because "by simply permitting evidence to be admitted at trial, [the rules] do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption." *Carmell v. Texas*, 529 U.S. 513, 533 n.23 (2000). "The issue of the admissibility of evidence is simply different

from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained." *Id.* at 546. In short, there is a distinction between laws that " 'alter the degree, or lessen the amount or measure, of the proof' required to convict from those laws that merely respect what kind of evidence may be introduced at trial." *Id.* at 550 (quoting *Hopt v. Utah*, 110 U.S. 574, 589 (1884)).

¶ 47 Amended Illinois Rule of Evidence 803(6) does not alter the amount of evidence necessary to convict defendant. Rather, the amended rule merely allows for the admission of medical records evidence that was previously excluded under the business records exception. The amended rule is "evenhanded, in the sense that [it] may benefit either the State or the defendant in any given case." *Id.* at 533 n.23. Because amended Illinois Rule of Evidence 803(6) addresses only what type of evidence can be admitted, it does not raise *ex post facto* concerns. See also *Lambert v. Coonrod*, 2012 IL App (4th) 110518, ¶ 22 (holding that the then-recently adopted Illinois Rules of Evidence applied retroactively).

¶ 48                                     CONCLUSION

¶ 49 For the foregoing reasons, the judgment of the appellate court, which affirmed the judgment of the circuit court, is affirmed.

¶ 50 Judgments affirmed.

¶ 51 JUSTICE CARTER took no part in the consideration or decision of this case.