NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220034-U

NO. 4-22-0034

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| BRIAN C. KELLER, | ) | No. 18CF794 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) the record did not rebut postplea counsel's certification that all necessary amendments were made to the motion to withdraw the guilty plea and (2) defendant had not established the requisite prejudice to support his claim of ineffective assistance of plea counsel and warrant the withdrawal of the guilty plea.

¶ 2    Pursuant to a fully negotiated guilty plea, defendant, Brian C. Keller, was convicted of aggravated battery and sentenced to 14 years' imprisonment. Later, defendant, through new postplea counsel, filed a motion to withdraw the guilty plea, and postplea counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Following a hearing, the trial court denied defendant's motion. Defendant now appeals from that denial, arguing (1) the record rebuts postplea counsel's certification that all necessary amendments were made to the motion to withdraw the guilty plea and (2) the trial court's decision was an abuse of discretion. For the reasons that follow, we reject defendant's arguments and affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Charges

¶ 5          In December 2018, the State charged defendant with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2018)) and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)). As for the aggravated battery charge, the State alleged, on or about December 24, 2018, defendant, in committing a battery, knowingly and without legal justification caused an injury to Alphonso Harris by means of discharging a firearm, in that he shot Harris with a handgun.

¶ 6                                    B. Motion to Reduce Bond

¶ 7          In January 2019, defendant hired counsel and then, through counsel, filed a motion to reduce bond.

¶ 8                                    C. Witness List

¶ 9          On February 13, 2019, defendant, through counsel, filed a witness list. Defendant's list of witnesses included Alicia Giles, Carol Foster, and Robert Foster.

¶ 10                                   D. Hearing on the Motion to Reduce Bond

¶ 11          On February 19, 2019, the trial court conducted a hearing on defendant's motion to reduce bond. During the hearing, defendant, through counsel, presented testimony from Alicia Giles, Carol Foster, and Robert Foster. In addition, defendant asked the court to take judicial notice of Harris's criminal history, which the court granted. The State, in turn, asked the court to take judicial notice of a pretrial services bond report, which the court granted.

¶ 12          Relevant to this appeal, the following is gleaned from the evidence presented. The charges against defendant in this case stemmed from a shooting allegedly committed around 1 a.m. on December 24, 2018. At that time, defendant lived with his fiancée, Alicia Giles, their two

children, and his fiancée's parents, Carol and Robert Foster. Carol and Robert testified defendant was at their home when they went to sleep around 12 a.m. on December 24, and they had no knowledge of defendant leaving after they went to sleep. Alicia testified she and defendant went to sleep shortly after 12 a.m. on December 24, and then they awoke together around 9 a.m. Alicia further testified defendant never left her side after they went to sleep. Defendant, who did not have a driver's license or a vehicle, relied on others to get around town. On cross-examination, Alicia acknowledged defendant had a cell phone in December 2018 but indicated she did not remember the cell phone number. Also on cross-examination, Carol provided her phone number and Alicia's phone number. Defendant's criminal history included two felony convictions for which he was sentenced to three-year terms of imprisonment and multiple misdemeanor convictions for which he was sentenced to various terms of incarceration.

¶ 13    At the conclusion of the hearing, defendant's counsel, as part of the argument for a bond reduction, asserted the following:

> "Basically, your Honor, obviously we're gonna be contesting this matter.
>
> It's gonna go to trial. It's clear that the Court—we've shown our hand, that my client was somewhere else. He's got alibi witnesses who have come here that know he did not commit this crime on December 24th at 1:00 a.m. in the morning."

The court, after its consideration of the evidence and arguments presented, denied defendant's motion.

¶ 14                    E. Notice of Affirmative Defense

¶ 15    On February 20, 2019, defendant, through counsel, filed a notice of an affirmative

defense. In the notice, defendant alleged he had an alibi in that he was with his family at the time of the alleged shooting.

¶ 16                                F. Motion to Suppress a Lineup Identification

¶ 17          In March 2019, defendant, through counsel, filed a motion to suppress a lineup identification.

¶ 18               G. Hearing on the Motion to Suppress a Lineup Identification

¶ 19          On April 5, 2019, the trial court conducted a hearing on defendant's motion to suppress a lineup identification. Defendant testified in support of his motion. In addition, defendant's counsel argued in support of the motion. The court, after its consideration of the evidence and arguments presented, denied defendant's motion.

¶ 20                                H. Notices of Discovery

¶ 21          On April 18 and 22, 2019, defendant, through counsel, filed notices of discovery, disclosing a photograph and a copy of a map.

¶ 22                                I. Motion for a Continuance

¶ 23          Also on April 22, 2019, the State, during a court proceeding, moved for a continuance on the basis it was "waiting for records from the police about cell phone data that they've got a search warrant for." Defendant, through counsel, objected to the continuance. Over defendant's objection, the court granted the State's motion. The court set the matter for a jury trial on May 13, 2019.

¶ 24                                J. Guilty Plea

¶ 25          On May 13, 2019, the parties appeared before the trial court for the scheduled jury trial. At the commencement of the proceeding, defendant's counsel noted defendant had rejected a plea offer. After being admonished about the possible sentences if convicted of the charged

offenses, defendant expressed a desire for his counsel to continue plea negotiations, which the court allowed.

¶ 26　　　　The trial court was eventually informed defendant and the State had reached a fully negotiated plea agreement. The terms of the agreement were set forth on the record and in writing. Defendant agreed to plead guilty to the aggravated battery charge in exchange for the State moving to dismiss the other charge and recommending a sentence of 14 years' imprisonment.

¶ 27　　　　The trial court conducted a detailed inquiry of defendant concerning the plea agreement and his decision to plead guilty. Relevant to this appeal, the following inquiry occurred:

"THE COURT: You've had the opportunity to discuss both the terms of the plea agreement along with the paperwork memorializing the plea agreement with your attorney; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you're satisfied with his services?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT: And you understand that by pleading guilty today there will not be a trial.

Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: And at that trial, the State would have the burden of proving you guilty beyond a reasonable doubt and that would stay with the State throughout the trial. At that trial, you

- 5 -

would have the opportunity—or, the right to be represented by counsel, present your own witnesses, and you could testify if you were so inclined, but if you chose not to testify, that could not be used against you, and that burden would remain on the State throughout.

Do you understand all that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you understood everything we've gone over so far?

THE DEFENDANT: Yes, ma'am."

¶ 28    The State provided the following factual basis in support of the plea:

"Your Honor, if this were to proceed to trial, the State's evidence would show on December 24th around 1:15 a.m., Peoria police officer Brian Moore responded to 2715 West Marquette in Peoria for reports of a male gunshot victim. This report came in after a ShotSpotter alert came in in [*sic*] the Wiswall area for six shots that had been fired.

Upon arrival, Officer Moore and other officers of the Peoria Police Department found Alphonso Harris bleeding from the arm, back, and buttocks area from suspected gunshot wounds.

As stated before, that ShotSpotter alert indicated that five rounds had been shot at nearby 2800 West Wiswall.

Alphonso Harris told police and paramedics at the scene that

- 6 -

he was at a party with some girls when a person known as BK or Brian Keller had showed up and began asking questions about Lionel Harris and Nashon Young, who is Alphonso's brother. The Defendant asked Alphonso that [*sic*] he could get ahold of his brother, Nashon and where he was at.

The parties also discussed Lionel and Nashon's suspected involvement in the murder of the Defendant's brother, Darryl, who was also known as Dreg.

The party lasted for four hours. The women at the party eventually went to the Laramie liquor store to get some more alcohol, and Alphonso and the Defendant decided to go get some marijuana.

Prior to leaving to get the marijuana, Alphonso could not find his cell phone, but he left with the Defendant.

After leaving the house and getting near Wiswall Street, the Defendant turned around and fired several times at Alphonso, striking him in the arm, back, and buttocks area.

Alphonso then ran around and knocked on several doors until one resident at 2715 Marquette called 9-1-1 for him.

Additionally, Alphonso Harris identified the Defendant, Brian Keller, in a lineup that was conducted by Detective Fillpot a few days later."

Defendant's counsel acknowledged the factual basis was consistent with the discovery provided

to the defense, and defendant acknowledged the State's evidence would support the factual basis.

¶ 29 After inquiring of defendant and hearing the factual basis for the plea, the trial court accepted the guilty plea, finding it to be voluntarily and knowingly given and supported by a sufficient factual basis. The court entered a judgment of conviction on the aggravated battery charge, dismissed the unlawful possession charge, and sentenced defendant to 14 years' imprisonment.

¶ 30 Contained within the common law record on appeal is a list of witnesses for the State that was filed on the same day defendant pleaded guilty. At the bottom of the State's list is a handwritten delta symbol followed by several handwritten names including Alicia Giles, Carol Foster, and Robert Foster. The judge presiding over these proceedings later acknowledged it was her handwriting setting forth the witnesses disclosed to her by defendant's counsel.

¶ 31 K. Motion to Withdraw the Guilty Plea

¶ 32 In June 2019, defendant, through plea counsel, filed a motion to withdraw the guilty plea. In the motion, defendant alleged he felt pressured to plead guilty and did not realize he was forever waiving his right to a trial if he pleaded guilty. At a hearing, defendant testified in support of his motion, noting, in part, he had "never been to trial before." Following the hearing, the trial court denied defendant's motion, and defendant appealed.

¶ 33 L. Remand for Compliance with Rule 604(d)

¶ 34 In January 2021, the Third District Appellate Court granted defendant's motion to remand for new postplea proceedings because of plea counsel's failure to file a Rule 604(d) certificate.

¶ 35 M. New Motion to Withdraw the Guilty Plea

¶ 36 In December 2021, defendant, through new postplea counsel, filed a new motion to

withdraw the guilty plea. In the motion, defendant alleged he, "despite having a plausible and evidence[-]based defense," felt compelled to plead guilty because of plea counsel's ineffectiveness. Relevant to this appeal, defendant complained plea counsel did not subpoena any witnesses for trial or explain a comment from the trial court on the day of the guilty plea about the number of jurors present. Defendant also complained plea counsel "failed to obtain," and "failed to request a continuance [to obtain]," "cell phone records that the State informed the [trial court] about during the [April 2019 court proceeding]," or, "[i]f these records were actually tendered to counsel before the *** trial date, counsel never disclosed, nor discussed, said evidence with [d]efendant." Defendant alleged the cell phone records were "vital to his defense." Defendant further highlighted the fact he had filed an affirmative defense asserting an alibi.

¶ 37                                    N. Rule 604(d) Certificate

¶ 38          Also in December 2021, defendant's postplea counsel filed a Rule 604(d) certificate, certifying the following: (1) "I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;" (2) "I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing;" and (3) "I have made any necessary amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 39                 O. Hearing on the Motion to Withdraw the Guilty Plea

¶ 40          In January 2022, the trial court conducted a hearing on defendant's motion to withdraw the guilty plea. Defendant testified in support of his motion. No other evidence was presented by the defense. The State asked the court to consider the transcript from the plea hearing. No other evidence was presented by the State.

¶ 41        Relevant to this appeal, defendant testified his primary reason for wanting to withdraw the guilty plea was because of the performance of plea counsel. Defendant confirmed it was "always the intention to either not go to trial because [Harris] didn't appear or assert an alibi defense." On the day of trial, defendant learned Harris appeared. At that point, plea counsel advised defendant of counsel's belief they would not have a favorable outcome if they proceeded to trial. Defendant, when asked if he discussed with plea counsel "how the trial would proceed, how selecting a jury would proceed, if you would testify," testified, "No, ma'am." Defendant noted plea counsel had not subpoenaed his witnesses or said anything about them "since the first day we came to court and my witnesses took the stand." Defendant also noted he was never told anything about the amount of jurors present. Defendant confirmed the State had sought a continuance "because of cell phone records" during the April 2019 court proceeding. When asked if he knew what those cell phone records were, defendant testified, "No, ma'am. I never saw them." When asked if the State tendered the cell phone records to plea counsel, defendant testified, "No, they did not." Defendant was then asked, "Did you—I mean, do you know for a fact that they never did?" Defendant clarified, "No, I don't. They never—they said they needed time to get them twice but never gave him—he never showed me a copy of anything as far as the records. So I don't believe he was—he was issued them." Defendant believed plea counsel was not "prepared at all" for going to trial on the day he pleaded guilty. Defendant testified he pleaded guilty because he felt he had "no choice."

¶ 42        During arguments, postplea counsel argued, in relevant part: "I do think there would be an extreme amount of pressure and someone put in a bad position where it was never discussed previous to the trial date what would happen if the victim showed." With respect to the cell phone records, counsel argued: "There are cell phone records that were supposed to—I guess

the State *** had asked for a continuance ***. *** But no cell phone records were ever tendered according to my client, and he had never seen them. They were never discussed again." Postplea counsel concluded "some of the things that [plea counsel] did do fall below the standard and do establish prejudice."

¶ 43        After considering the evidence and arguments presented, the trial court denied defendant's motion to withdraw the guilty plea. In relevant part, the court, after noting it had "an independent recollection of what happened on the day that [defendant] was going to proceed to trial," noted defendant had stated he was satisfied with plea counsel's representation at the time he pleaded guilty and understood what he was giving up by pleading guilty. The court found there was "nothing in the record that would suggest that this is anything other than you're having some buyer's remorse about the agreement that was reached."

¶ 44        This appeal followed.

¶ 45                            II. ANALYSIS

¶ 46        On appeal, defendant argues (1) the record rebuts postplea counsel's certification that all necessary amendments were made to the motion to withdraw the guilty plea and (2) the trial court's decision to deny the motion to withdraw the guilty plea was an abuse of discretion. The State disagrees with each of defendant's arguments.

¶ 47                      A. Compliance With Rule 604(d)

¶ 48        First, defendant argues the record rebuts postplea counsel's certification that all necessary amendments were made to the motion to withdraw the guilty plea in that it shows the claim of ineffective assistance of plea counsel was insufficiently pleaded. Specifically, defendant contends postplea counsel, in order to sufficiently plead the claim of ineffective assistance of plea counsel and comply with the provision of Rule 604(d) that all necessary amendments have been

made to the motion to withdraw the guilty plea, was required to either describe the contents of the cell phone records in the motion to withdraw the guilty plea or attach those records to the motion.

¶ 49 Rule 604(d) requires counsel representing a defendant on a motion to withdraw a guilty plea to certify the following:

> "[T]he attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

"[C]ounsel must strictly comply with 'each of the provisions of Rule 604(d).' " *People v. Gorss*, 2022 IL 126464, ¶ 19, 194 N.E.3d 490 (quoting *People v. Janes*, 158 Ill. 2d 27, 33, 630 N.E.2d 790, 792 (1994)). This court generally considers the certificate itself to evaluate compliance with Rule 604(d); however, the certificate may be refuted by the record. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 37, 186 N.E.3d 467. We review *de novo* whether counsel strictly complied with the provisions of Rule 604(d). *Gorss*, 2022 IL 126464, ¶ 10.

¶ 50 To support his contention that postplea counsel was required to either describe the contents of the cell phone records in the motion to withdraw the guilty plea or attach those records to the motion in order to sufficiently plead the claim of ineffective assistance of plea counsel and comply with the provision of Rule 604(d) that all necessary amendments have been made to the motion to withdraw the guilty plea, defendant cites *People v. Bridges*, 2017 IL App (2d) 150718,

- 12 -

87 N.E.3d 441. *Bridges* does not, however, support defendant's contention. In that case, the appellate court accepted the defendant's argument suggesting counsel's failure to, amongst other things, attach an affidavit supporting the factual allegations in the motion to withdraw the guilty plea that were not of record demonstrated a lack of compliance with Rule 604(d). *Id.* ¶¶ 1, 9. Unlike *Bridges*, defendant here is not complaining that any factual allegations related to the cell phone records should have been supported by affidavit. Indeed, defendant, when replying to the State's argument before this court, states: "It is unclear *** what an affidavit has to do with this issue."

¶ 51 In the motion to withdraw the guilty plea, postplea counsel alleged defendant, "despite having a plausible and evidence[-]based defense," felt compelled to plead guilty because of plea counsel's ineffectiveness, ineffectiveness which was based, at least in part, on plea counsel's actions related to the cell phone records discussed during the April 2019 court proceeding. Postplea counsel then, during the hearing on the motion to withdraw the guilty plea, attempted to establish the alleged claim of ineffective assistance of plea counsel through defendant's testimony. We are, particularly given defendant's failure to provide any supporting authority, not convinced postplea counsel's failure to describe the contents of the cell phone records in the motion to withdraw the guilty plea or attach those records to the motion renders the claim of ineffective assistance insufficiently pleaded and establishes a lack of compliance with the provision of Rule 604(d) that any necessary amendments have been made to the motion to withdraw the guilty plea. See *In re H.L.*, 2015 IL 118529, ¶ 10, 48 N.E.3d 1071 ( "The filing of a Rule 604(d) certificate enables the trial court to insure that counsel has reviewed the defendant's claim and considered all relevant bases for the motion." (Internal quotation marks omitted.)). Accordingly, we conclude the record does not rebut postplea counsel's certification that all necessary amendments were made to the motion to withdraw the guilty plea.

¶ 52    To be sure, the issue of whether postplea counsel strictly complied with the provisions of Rule 604(d) is separate from the issue of whether postplea counsel provided effective assistance. Defendant, when replying to the State's argument before this court, makes clear he is not raising the latter: "Nor has [defendant] argued that post[ ]plea counsel was constitutionally ineffective." Defendant's decision not to raise a claim of ineffective assistance of postplea counsel, at least to the extent it would be based upon the cell phone records, makes sense, as those records are, undisputedly, not part of the record on appeal. Under these circumstances, any such claim is better suited for a collateral proceeding.

¶ 53            B. Denial of the Motion to Withdraw the Guilty Plea

¶ 54    Next, defendant argues the trial court's decision to deny the motion to withdraw the guilty plea was an abuse of discretion because he had established his claim of ineffective assistance of plea counsel. Specifically, defendant contends he had shown plea counsel provided ineffective assistance by never discussing with him strategy and "basic trial procedures like how the trial would proceed, how jury selection worked, or whether he would testify," which resulted in him abandoning a strong alibi defense and pleading guilty.

¶ 55    There is no absolute right to withdraw a guilty plea; rather, a defendant must show a manifest injustice under the circumstances. *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* We generally review the decision to deny a motion to withdraw a guilty plea for an abuse of discretion. *Id.*

¶ 56    One possible basis for the withdrawal of a guilty plea is where plea counsel gives inadequate advice prior to the entry of the plea. *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39,

85 N.E.3d 815. To warrant the withdrawal of a guilty plea on this basis, the defendant must establish a denial of the right to the effective assistance of counsel. *Id*. That is, the defendant must show both (1) deficient performance (*i.e.*, counsel's representation fell below an objective standard of reasonableness) and (2) prejudice (*i.e.*, there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would not have pleaded guilty and would have insisted on going to trial). *Id.* When reviewing a ruling on a claim of ineffective assistance, "we defer to the trial court's factual findings and will disturb them only if they are against the manifest weight of the evidence but review *de novo* the court's ultimate determination of whether counsel rendered ineffective assistance." *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 55, 92 N.E.3d 544.

¶ 57        With respect to prejudice, defendant maintains plea counsel's inadequate advice resulted in him abandoning a strong alibi defense and pleading guilty. See *People v. Rissley*, 206 Ill. 2d 403, 459-60, 795 N.E.2d 174, 205 (2003) (stating a defendant's assertion that he would not have pleaded guilty absent counsel's inadequate advice must be accompanied by either a claim of innocence or the articulation of a plausible defense in order to satisfy the prejudice requirement of a claim of ineffective assistance relating to a defendant's prospects at trial). At the hearing on the motion to withdraw the guilty plea, defendant testified about having an alibi defense. His testimony, however, was largely conclusory. He did not present any witnesses or other evidence to support his claim. Even if this court were to consider the evidence presented at the hearing on the motion to reduce bond that was not presented to the trial court during the hearing on the motion to withdraw the guilty plea, we are not convinced that evidence, as defendant argues, establishes a defense "that likely would have been successful at trial." Moreover, the trial court, as a factual matter, was not convinced defendant pleaded guilty based upon the allegedly inadequate advice of plea counsel, finding defendant was rather having "buyer's remorse about the agreement that was

reached." That factual determination is supported by the evidence before the court. As the court highlighted, the transcript from the guilty plea hearing shows defendant confirmed he was satisfied with plea counsel's representation and understood he was giving up his right to a trial where he would have the opportunity to present witnesses and testify. We, like the trial court, conclude defendant has not established the requisite prejudice to support his claim of ineffective assistance of plea counsel and warrant the withdrawal of the guilty plea.

¶ 58                                III. CONCLUSION

¶ 59        We affirm the trial court's judgment.

¶ 60        Affirmed.